KAMALA D. HARRIS
Attorney General of California
SARA J. DRAKE, State Bar No. 102565
Senior Assistant Attorney General
WILLIAM P. TORNGREN, State Bar No. 58493
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 323-3033
 Fax: (916) 323-2319
 E-mail: William.Torngren@doj.ca.gov
Attorneys for Plaintiff State of California

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA,<br><br>                 Plaintiff,<br><br>v.<br><br>IIPAY NATION OF SANTA YSABEL, also known as SANTA YSABEL BAND OF DIEGUENO MISSION INDIANS, a federally-recognized Indian Tribe, SANTA YSABEL INTERACTIVE, a tribal economic development entity, SANTA YSABEL GAMING COMMISSION, DAVID CHELETTE, DAVID VIALPANDO, ANTHONY BUCARO, MICHELLE MAXCY, VIRGIL PEREZ, and BRANDIE TAYLOR,<br><br>                 Defendants. | Case No. **'14CV2724 AJB  NLS**<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

The State of California (State) alleges:

## STATEMENT OF THE CASE

1. This action seeks appropriate injunctive relief to prevent unlawful Internet gambling. Defendant Iipay Nation of Santa Ysabel, also known as Santa Ysabel

Band of Diegueno Mission Indians (Tribe), has begun to offer a facsimile of bingo over the Internet to bettors, who are not located on the Tribe's Indian lands. In addition to violating state and federal law, the Tribe's conduct materially breaches the tribal-state class III gaming compact (Compact) between the Tribe and the State. This constitutes an imminent threat to the public health, safety, and welfare of the State's residents, and a threat to good order. Therefore, this Court should issue orders temporarily restraining, and permanently enjoining, the Tribe's offering and conducting Internet gambling in breach of the Compact and in violation of state and federal law. This Court further should declare that the Internet gambling materially breaches the Compact.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the State's claim arises under federal statutes and the federal common law. This Court also has jurisdiction pursuant to 25 U.S.C. § 2710(d)(7)(A)(ii) because this action is initiated by the State to enjoin conduct related to the Tribe's class III gaming activity that violates its Compact with the State. This Court further has jurisdiction under 31 U.S.C. § 5365(a) because the State brings this action to prevent and restrain restricted transactions that violate the Unlawful Internet Gambling Enforcement Act.

3. Venue is proper in this District because the State's claims arise from conduct occurring in part, and the underlying Compact is to be performed, in the Southern District of California.

## GENERAL ALLEGATIONS

### The Compact and Waiver of Sovereign Immunity

4. On September 8, 2003, the Tribe and the State entered into the Compact pursuant to the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701-2721, 18 U.S.C. §§ 1166-1167. A true and correct copy of the Compact is Exhibit 1 to this complaint and incorporated by reference. On December 22, 2003, the Compact

1 became effective upon its publication in the Federal Register. 68 Fed. Reg. 71131
2 (Dec. 22, 2003).
3     5. Section 2.13.1 of the Compact defines the terms "Santa Ysabel Tribe" or
4 "Tribe" to include the Tribe, as well as its authorized officials and agencies.
5 (Compact, 6, § 2.13.1.) Based upon information obtained from the National Indian
6 Gaming Commission (NIGC), the Tribe's website, and the press release
7 announcing the Internet gambling's launch, the State is informed and believes and,
8 therefore, alleges that each defendant, other than the Tribe itself, is an official or an
9 agency of the Tribe, as follows:
10     a. Santa Ysabel Interactive is a tribal economic development entity
11 that operates the Internet gambling.
12     b. David Chelette is Santa Ysabel Interactive's president.
13     c. The Santa Ysabel Tribal Gaming Commission (Gaming
14 Commission) is the tribal entity that purports to regulate the Internet gambling. The
15 State is informed and believes and, therefore, alleges that the Gaming Commission
16 is a "Tribal Gaming Agency" within the meaning of the Compact. (*See* Compact,
17 7, § 2.20.)
18     d. David Vialpando is the Gaming Commission's chairman.
19     e. Anthony Bucaro is the Gaming Commission's gaming/compliance
20 agent.
21     f. Michelle Maxcy is the Gaming Commission's background
22 investigator.
23     g. Virgil Perez is the Tribal Chairman.
24     h. Brandie Taylor is the Tribe's Vice-Chairwoman.
25    6. The Compact establishes the parties' rights, privileges, duties, and
26 obligations with respect to class III gaming on the Tribe's Indian lands.
27    7. The Compact's purposes and objectives include, among other things,
28 ensuring a fair and honest gaming operation in accordance with IGRA, promoting

ethical practices, and maintaining a high level of integrity in the Tribe's gaming. (Compact, 4, § 1.0.)

8. The Compact provides that the Tribe may combine and operate in its gaming facility "any kinds of gaming permitted under law, *except to the extent limited under IGRA* . . . ." (Compact, 8, § 4.2 (emphasis added).)

9. Section 3.0 of the Compact provides that the Tribe shall not engage in class III gaming that is not expressly authorized in the Compact. Under section 4.1, the Tribe is authorized and permitted to operate (a) gaming devices – i.e., slot machines, (b) banking and percentage card games, and (c) "any devices or games that are authorized under state law to the California State Lottery, *provided that the [Tribe] will not offer such games through use of the Internet unless others in the state are permitted to do so under state and federal law.*" (Compact, 8, § 4.1(c) (emphasis added).)

10. The Compact provides that a tribal gaming agency, as designated under tribal law, shall conduct on-site gaming regulation and control "in order to enforce the terms of this . . . Compact [and] IGRA" with respect to the business enterprise that offers and operates class III gaming activities and the facilities that serve that business enterprise. (Compact, 22, § 7.1.) The tribal gaming agency is, among other things, to ensure enforcement of all relevant laws and rules and to prevent illegal activity occurring with regard to the business enterprise that offers and operates class III gaming activities and within the facilities that serve that business enterprise.

11. Gaming conducted under the Compact must comply with ordinances approved in accordance with IGRA. (Compact, 11, § 6.1(a)).) The gaming agency shall transmit copies of its rules, regulations, and the like, as well as gaming ordinance amendments, to the California Gambling Control Commission within twenty days following adoption or amendment. (Compact, 11, § 6.1(c).) Under the Compact, the Tribe is not to permit persons under the age of twenty-one years to be

Complaint For Injunctive And
Declaratory Relief

1  present in any room or area in which class III gaming activities are conducted. (Compact, 11, § 6.3.)

12. Section 8.2 of the Compact provides:

> Nothing in this Gaming Compact affects the civil or criminal jurisdiction of the State under Public Law 280 (18 U.S.C. Sec. 1162; 28 U.S.C. Sec. 1360) or IGRA, to the extent applicable. In addition, criminal jurisdiction to enforce state gambling laws is transferred to the State pursuant to 18 U.S.C. § 1166(d), provided that no Gaming Activity conducted by the Tribe pursuant to this Gaming Compact may be deemed to be a civil or criminal violation of any law of the State.

13. The Compact requires that the parties meet and confer in a good faith attempt to resolve disputes that occur under it. This requirement is "without prejudice to the right of either party to seek injunctive relief against the other when circumstances are deemed to require immediate relief." (Compact, 27, § 9.1.)

14. Section 9.4 of the Compact provides for a limited waiver of sovereign immunity as follows:

> (a) In the event that a dispute is to be resolved in federal court . . . as provided in this Section 9, the State and the Santa Ysabel Tribe expressly consent to be sued therein and waive any immunity therefrom that they may have provided that:
>
> (1) The dispute is limited solely to issues arising under this Gaming Compact;
>
> (2) Neither side makes any claim for monetary damages (that is, only injunctive, specific performance, . . . or declaratory relief is sought); and
>
> (3) No person or entity other than the Santa Ysabel Tribe and the State is party to the action . . . .

15. Section 11.2.1(c) of the Compact empowers either party to bring an action in federal court, after providing a sixty-day written notice of an opportunity to cure any alleged breach, for a declaration that the other party has materially breached the Compact. Upon issuance of that declaration, the complaining party unilaterally may terminate the Compact.

Complaint For Injunctive And Declaratory Relief

## Tribal Gaming Under IGRA

16. Congress passed IGRA to provide a statutory basis for the operation of gambling by Indian tribes. Among other things, IGRA created the NIGC.

17. IGRA restricts tribal gaming to "Indian lands," which include Indian reservations and lands held in trust by the United States for the benefit of any Indian tribe. 25 U.S.C. § 2703(4). IGRA does not authorize tribal gaming outside of Indian lands. See 25 U.S.C. § 2710(b)(1), (d)(1).

18. IGRA divides tribal gaming into three classifications: class I, which involves traditional forms of tribal gaming and social games solely for minimal prizes; class II, which is bingo meeting certain criteria and some card games; and class III, which is all forms of gaming that are not class I or class II. 25 U.S.C. § 2703(6), (7), (8). Class III gaming includes banking card games, electronic facsimiles of any game of chance, and slot machines of any kind. 25 U.S.C. § 2703(7)(B). The NIGC defines an electronic facsimile to be "a game played in an electronic . . . format that replicates a game of chance by incorporating all of the characteristics of the game, except when, for bingo . . . , the electronic . . . format broadens participation by allowing multiple players to play with or against each other rather than with or against a machine." 25 C.F.R. § 502.8.

19. Class III gaming activities are lawful on Indian lands only if the activities are (a) authorized by a tribal ordinance or resolution approved by the NIGC's chair, (b) located in a state that permits such gaming, and (c) conducted in conformance with a tribal-state compact. 25 U.S.C. 2710(d)(1).

20. IGRA waives sovereign immunity with respect to, and confers federal district court jurisdiction over, "any cause of action initiated by a State or Indian tribe to enjoin class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact." 25 U.S.C. § 2710(d)(7)(A)(ii).

Complaint For Injunctive And Declaratory Relief

**Unlawful Internet Gambling**

21. The Unlawful Internet Gambling Enforcement Act of 2006 (UIGEA), 31 U.S.C. §§ 5361-5367, defines unlawful Internet gambling as placing, receiving, or otherwise transmitting a bet or wager by any means that involves the Internet "where such bet or wager is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet is initiated, received, or otherwise made." 31 U.S.C. § 5362(10)(A).

22. The UIGEA contains an intrastate exception for bets or wagers that (a) occur exclusively within a single state, (b) are expressly authorized by state law, (c) are subject to state law or regulation requiring verifications "reasonably designed to block access to minors and persons located out of" the state, and (d) do not violate any provisions of enumerated federal laws including IGRA. 31 U.S.C. § 5362(10)(B).

23. The UIGEA contains an intra-tribal exception for bets or wagers that (a) occur exclusively within a single tribe's Indian lands as defined by IGRA, (b) are authorized by ordinance and, for class III gaming, a compact, (c) are subject to an ordinance that includes verifications "reasonably designed to block access to minors and persons located out of the applicable Tribal lands," and (d) do not violate IGRA. 31 U.S.C. § 5362(10)(C).

24. The UIGEA prohibits a person engaged in the business of betting or wagering from knowingly accepting credit, electronic fund transfers, checks, or the proceeds of any other form of financial transaction in connection with another person's participation in unlawful Internet gambling. 31 U.S.C. § 5363.

25. The UIGEA confers original and exclusive federal district court jurisdiction to prevent and restrain prohibited transactions. 31 U.S.C. § 5365(a). The UIGEA allows a state to pursue the remedies provided under its compact with respect to a prohibited transaction that "allegedly has been or will be initiated,

Complaint For Injunctive And Declaratory Relief

1 received, or otherwise made on Indian lands (as that term is defined in [25 U.S.C. § 2703(4)])." 31 U.S.C. § 5365(b)(3)(A)(ii).

### California Gambling Laws

26. The California Constitution broadly prohibits lotteries. Cal. Const. art. IV, § 19(a). It allows for the California State Lottery and bingo games for charitable purposes. Cal. Const. art. IV, § 19(c), (d). It also allows the negotiation and legislative ratification of tribal-state gaming compacts for the operation of slot machines and for the conduct of lottery games and banking and percentage games by federally recognized tribes on Indian lands in California. Cal. Const. art. IV, § 19(f). The State's Legislature has found and declared that unregulated gambling enterprises are inimical to the public health, safety, welfare, and good order. Cal. Bus. & Prof. Code § 19801(d).

27. California's statutory prohibitions relating to gambling as they existed on November 6, 1984, have been constitutionalized. *Hotel Employees and Restaurant Employees Int'l v. Davis*, 21 Cal. 4th 585, 605-06 (1999). California statutes make setting up and drawing a lottery, selling or furnishing a chance in a lottery, and aiding or assisting in those acts, crimes. Cal. Penal Code §§ 320, 321, 322. California Penal Code section 337a broadly prohibits keeping a place with devices for the purpose of recording any bets or wagers, receiving anything of value bet or wagered, recording bets or wagers, or offering or accepting any bets or wagers. Prevailing upon a person, through invitation or device, to visit a place kept for the purpose of illegal gambling is a crime. Cal. Penal Code § 318. Every place used for the purpose of illegal gambling is a nuisance. Cal. Penal Code § 11225(a)(1).

28. In the years following its creation pursuant to the California Constitution, the California State Lottery has offered games, the names of which included "bingo." These games include, without limitation, "Bingo Boxes," "Blackout Bingo," "Diamond Bingo," and "Bingo Times 5." No California State Lottery game is permitted to be offered through the Internet.

Complaint For Injunctive And Declaratory Relief

29. California laws regarding charitable bingo require that each participant in a game be physically present at the time and place where the game is being conducted. *E.g.*, Cal. Penal Code § 326.5(m). California laws regarding charitable bingo generally prohibit using electronic or video displays in connection with the game of bingo. *E.g.*, Cal. Penal Code § 326.5(o). California does not expressly authorize Internet bingo as required for UIGEA's intrastate exception. 31 U.S.C. § 5362(10)(B).

### The NIGC's Interpretations

30. Interpreting IGRA, the NIGC has determined that bingo, or a bingo-like game, has three elements: (a) it is played for prizes with cards bearing numbers or other designations; (b) multiple players cover the numbers when objects, similarly numbered, are drawn or electronically determined; and (c) the game is won by the first person covering a previously designated arrangement of numbers. Based on these elements, the NIGC has determined that bingo requires participation beyond hitting a start button and having numbers covered. The NIGC further has determined that allowing a game system to cover the bingo card, rather than the player, incorporates all characteristics of the game of bingo into an electronic machine and system, and renders such a system an electronic facsimile.

31. Interpreting IGRA, the NIGC has opined that if a particular aid to a game becomes a necessity, or encompasses all the aspects of a particular game, it ceases to be a technological aid and becomes an electronic facsimile.

32. Because IGRA gaming is limited to Indian lands, the NIGC consistently has concluded that tribes making Internet gambling available to persons not located on Indian lands violate IGRA.

### The Tribe's Internet Gambling Is Accessible Outside its Indian Lands

33. On or about November 3, 2014, the Tribe began to offer a facsimile of bingo over the Internet to bettors, eighteen years or older, without regard to whether they are located on the Tribe's Indian lands. Under the Tribe's facsimile, bettors

use the Internet and log into the Tribe's bingo website (www.desertrosebingo.com). The bettors place a bet by withdrawing money from accounts. Bettors fund their accounts by credit card or other electronic funds transfer. The Tribe knowingly accepts such funds. After the bet is placed, the game system plays the game including covering the bingo card and determining the winner. The bettor's participation is limited to electing the amount to bet and how many cards to play in any game.

34. Based upon tribal representatives' representations, the State is informed and believes and, therefore, alleges that the servers for, or other equipment integral to, the Tribe's Internet gambling are located on the Tribe's Indian lands. The State further is informed and believes and, therefore, alleges that the Tribe claims that some portion, if not all, of the Internet gambling occurs on its Indian lands.

35. Persons, who are not located on the Tribe's Indian lands, can open accounts and participate in the Tribe's Internet gambling. The State's investigators opened an account and participated in the Tribe's Internet gambling from off of the Tribe's Indian lands.

36. Based upon the NIGC's website and responses to inquiries, the State is informed and believes and, therefore, alleges that the Tribe's gaming ordinance, as approved by the NIGC's chair, does not expressly authorize Internet bets or wagers and the method by which they are initiated and received or otherwise made. The State further is informed and believes and, therefore, alleges that the Tribe's gaming ordinance, as approved by the NIGC's chair, does not include age and location verification requirements reasonably designed to block access to minors and persons located outside the Tribe's Indian lands. The State also is informed and believes and, therefore, alleges that the Tribe's gaming ordinance, as approved by the NIGC's chair, does not include appropriate data security standards to prevent unauthorized access by any person whose age and current location has not been verified. Finally, the State is informed and believes and, therefore, alleges that the

1   Tribe's ordinances, as approved by the NIGC's chair, do not include provisions
2   required to meet any intra-tribal exception under the UIGEA.
3      37.  The Compact does not expressly authorize Internet bets or wagers and the
4   method by which they are initiated and received or otherwise made.  The Compact
5   does not include age and location verification requirements reasonably designed to
6   block access to minors and persons located outside the Tribe's Indian lands.  The
7   Compact does not include appropriate data security standards to prevent
8   unauthorized access by any person whose age and current location has not been
9   verified.  The Compact thus does not include provisions required to meet any intra-
10  tribal exception under the UIGEA.

### The Meet and Confer Process

38. In July 2014, information appeared in the gaming press and gambling blogs that the Tribe intended to "launch real money online poker" in California within a short time.  On July 14, 2014, the State sent a letter to the Tribe requesting that the parties meet and confer concerning whether the Tribe's planned Internet gambling materially breached the Compact.  That letter also referred to Internet bingo.

39. By letter dated July 17, 2014, the Tribe rejected the State's request to meet and confer.  The Tribe responded that it intended to offer only online poker, and not Internet bingo, conducted from servers located on tribal lands.  The Tribe claimed that its prospective Internet gambling was not covered by the Compact.  The Tribe advised that it had no intention of discussing with the State any federal statutes, including IGRA and the UIGEA.

### FIRST CLAIM FOR RELIEF
### (Breach of Compact)

40. The State realleges and incorporates by reference each and every allegation set forth above in paragraphs 1 through 39.

Complaint For Injunctive And Declaratory Relief

41. Under the Compact, the Tribe agreed not to engage in class III gaming that is not expressly authorized by the Compact and not to conduct gaming to the extent limited under IGRA. The Tribe further agreed not to offer, by using the Internet, games authorized to the California State Lottery unless others in California were permitted to do so under state and federal law. The Tribe also agreed to control its class III gaming so as to enforce the Compact's terms and IGRA and to prevent illegal activity in operating class III gaming activities. Furthermore, the Tribe agreed that its class III gaming would comply with ordinances approved in accordance with IGRA and would not be available to persons under twenty-one years old.

42. The Internet gambling alleged in this Complaint is class III gaming not authorized by the Compact, is not conducted in accordance with IGRA, and is illegal under state and federal laws. Among other things, the Tribe's Internet gambling constitutes unlawful Internet gambling and violates, without limitation, California Penal Code sections 318, 320, 321, 322, 337a, 326.5(m), and 326.5(o). Additionally, the Tribe's Internet gambling does not comply with ordinances approved in accordance with IGRA and is available to persons under twenty-one years old.

43. By the actions alleged in this Complaint, the Tribe materially breached, and continues to breach, the Compact.

44. The facts alleged in this Complaint demonstrate that emergency relief is required to maintain the public health and safety and general good order. The facts alleged in this Complaint further demonstrate that the State is entitled to injunctive relief as a result of the Tribe's material breach of the Compact.

45. By this Complaint and pursuant to Compact section 11.2.1(c), the State gives the Tribe written notice of an opportunity to cure its breach of the Compact. If the Tribe does not cure within sixty days, the State is entitled to a declaration that the Tribe has materially breached the Compact.

## SECOND CLAIM FOR RELIEF

### (Unlawful Internet Gambling)

46. The State realleges and incorporates by reference each and every allegation set forth above in paragraphs 1 through 45.

47. The Internet gambling offered by the Tribe is unlawful Internet gambling under the UIGEA.

48. The Tribe is engaged in the business of betting and wagering under the UIGEA.

49. In connection with the Internet gambling that it offers and other persons' participation in that gambling, the Tribe knowingly has accepted, and is accepting, credit, the proceeds of credit, electronic fund transfers, and other funds and monies denominated in 31 U.S.C. § 5363.

50. The State has authority to enforce the Compact, and the Tribe has waived sovereign immunity with respect to such enforcement. The Compact provides authority for the State to initiate enforcement proceedings. The UIGEA authorizes such proceedings in connection with the unlawful Internet gambling offered by the Tribe.

51. The facts alleged in this Complaint demonstrate that emergency relief is required to maintain the public health and safety and general good order and to restrain the Tribe's violation of the UIGEA. The facts alleged in this Complaint further demonstrate that the State is entitled to injunctive relief as a result of the Tribe's violation of the UIGEA.

## PRAYER AND RELIEF REQUESTED

WHEREFORE, the State prays that:

1. This Court enter a temporary restraining order, and preliminary and permanent injunctions, prohibiting the defendants, including their officers, agents, servants, employees and persons acting under any defendant's direction and

control, from offering and operating Internet gambling in violation of the Compact, IGRA, and the UIGEA.

2. This Court declare that the Tribe has materially breached the Compact, that the Tribe has failed to cure the breach within sixty days of written notice, and that the State may exercise all rights, powers, and privileges accorded it with respect thereto including, without limitation, the right to terminate the Compact.

3. This Court enter such further orders and judgments as it deems appropriate.

Dated: November 18, 2014
Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
SARA J. DRAKE
Senior Assistant Attorney General


/s/ WILLIAM P. TORNGREN


WILLIAM P. TORNGREN
Deputy Attorney General
*Attorneys for Plaintiff State of California*