LAURA E. DUFFY
United States Attorney
GLEN F. DORGAN (CBN 160502)
Assistant United States Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, California 92101
Tel: (619) 546-7665  Fax: (619) 546-7751
Email: glen.dorgan@usdoj.gov

Attorneys for Plaintiff UNITED STATES

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA,<br><br>                    Plaintiff,<br><br>v.<br><br>IIPAY NATION, *et al.*,<br><br>                    Defendants. | CASE NO.  3:14-cv-02724-AJB-NLS<br><br>CASE NO.  3:14-cv-02855-AJB-NLS<br><br>**DECLARATION OF GLEN F. DORGAN IN SUPPORT OF UNITED STATES' SUMMARY JUDGMENT REPLY BRIEF** |
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>IIPAY NATION, *et al.*,<br><br>                    Defendants. | Date:     June 27, 2016<br>Time:     3:00 p.m.<br>Courtroom:  3B<br>Hon. Anthony J. Battaglia |

///

///

///

///

///

I, Glen F. Dorgan, declare as follows:

1. I am an Assistant U.S. Attorney and counsel for Plaintiff United States of America in the above-captioned action. I have personal knowledge of the following facts and, if called as a witness, could and would competently testify thereto.

2. Based on my review and comparison of the Tribal Defendants' Statement of Facts [Doc. #67-1] and the United States' Separate Statement of Undisputed Material Facts [Doc. #62], I have prepared the chart attached hereto as Exhibit "A" that illustrates those instances in which the Tribal Defendants have admitted the United States' facts, modified the United States' facts without material changes, and/or ignored the United States' facts.

3. Kevin Quigley correctly notes in his declaration [Doc. #67-9] that he emailed a draft stipulation of facts to all counsel on May 10, 2016, and that the genesis of draft stipulation was a draft I had prepared previously. While I read counsel's declaration as explaining why a stipulation was not reached notwithstanding his reference in his *ex parte* to the parties' meet and confer efforts, I am concerned that the explanation suggests that the United States and the State of California did not cooperate in good faith. That is not the case. Not mentioned in Mr. Quigley's declaration is the fact that I circulated the first draft of stipulated facts by email on March 25, 2016, and did not receive a response from counsel for the Tribal Defendants until April 28, 2016, one day before the United States' motion was due to be filed. In the response, Mr. Quigley advised that he would be proposing changes to my draft, but he did not specify the changes. Because, as of April 28, 2016, the United States had already prepared a separate statement with evidentiary citations and there was no time to discuss changes that the Tribal Defendants proposed to the stipulated facts prior to filing the motion, the stipulation was not pursued at that time. The issue was not revisited by the Tribal Defendants until Mr. Quigley's email of May 10, 2016, when he circulated his changes. I ultimately did not agree to Mr. Quigley's draft. Among other reasons, I did not agree because the draft included numerous new facts, and I advised that I could not stipulate to new facts without

1  understanding the materiality of the information in the context of any opposition that the
2  Tribal Defendants intended to file.

3  I declare under penalty of perjury under the laws of the United States of America
4  that the foregoing is true and correct.

5  Executed this 3rd day of June, 2016, at San Diego, California.

7  s/*Glen F. Dorgan*
Glen F. Dorgan

**Ex. "A" – Chart Comparison of Separate Statements**
*State of California v. Iipay Nation*
*Case No. 3:14-cv-02724*

| United States' Material Facts | Defendants' Response |
|---|---|
| 1.  Defendant Iipay Nation of Santa Ysabel ("Iipay") is a federally-recognized Indian Tribe. | 1.  Undisputed.  *See* TDSUF 1. |
| 2.  The Santa Ysabel Indian Reservation ("Tribal Lands" or Iipay Indian Lands") consists of approximately 15,500 acres located between Santa Ysabel and Warner Springs within San Diego County, State of California. | 2.  Undisputed.  *See* TDSUF 2. |
| 3.  Iipay previously owned the Santa Ysabel Casino (sometimes referred to as the "brick and mortar casino"), which was located on Iipay's Indian Lands and housed slot machines, card games and bingo. | 3.  Undisputed.  *See* TDSUF 6. |
| 4.  In or about February 2010, Iipay's legislature enacted the "Iipay Nation of Santa Ysabel Gaming Ordinance" ("Iipay Gaming Ordinance"), a true and correct copy of which is attached as Exhibit "5" to the Declaration of Glen F. Dorgan. | 4.  Undisputed.  *See* TDSUF 7. |
| 5. The Iipay Gaming Ordinance established the Santa Ysabel Gaming Commission ("the Commission") to "serve as the Tribe's regulatory agency with sole responsibility to monitor and regulate all gaming . . . ." | 5.  Undisputed.  *See* TDSUF 12. |

| | |
|---|---|
| 6. David Vialpando, the former "Special Agent-in-Charge, Southern California" for the California Department of Justice, Bureau of Gambling Control, has held the position of the Chairman of the Commission since December 2012. | 6. Undisputed. *See* TDSUF 13. |
| 7. Defendant Santa Ysabel Tribal Development Corporation ("TDC") is a tribal corporation wholly owned by Iipay. | 7. Undisputed. *See* TDSUF 20. |
| 8. Defendant Santa Ysabel Interactive ("SYI") is a tribal corporation and a wholly owned subsidiary of TDC. | 8. Undisputed. *See* TDSUF 21. |
| 9. SYI is neither a "financial transaction provider," an "interactive computer service," nor a "telecommunications service," as those terms are used in 31 U.S.C. § 5362(2). | 9. Undisputed. *See* TDSUF 138-140. |
| 10. SYI was chartered in July 2013 for the purpose of exploring opportunities for "proceeding with interactive gaming" on behalf of Iipay. | 10. Undisputed. *See* TDSUF 23. |
| 11. David Chelette is the President of SYI, and he (along with Donavan Durbin) is one of SYI's two designated representatives for purposes of SYI's Rule 30(b)(6) deposition. | 11. Undisputed. *See* TDSUF 24. |

| | |
|---|---|
| 12. Donavan Durbin is the Chief Technology Officer of SYI, and he (along with David Chelette) is one of SYI's two designated representatives for purposes of SYI's Rule 30(b)(6) deposition. | 12. Undisputed. *See* TDSUF 25. |
| 13. SYI owns and operates Desert Rose Bingo ("DRB") and manages all gaming revenue for the benefit of Iipay. | 13. Undisputed. *See* TDSUF 26. |
| 14. DRB is a server-based bingo game offered for real money play to adult residents of the State of California who are located within the State of California. | 14. Undisputed. *See* TDSUF 30. |
| 15. When DRB is operational, a patron may participate in the gaming only through the use of a web-browser-enabled device, such as a cell phone, tablet or personal computer. | 15. Undisputed. *See* TDSUF 57. |
| 16. SYI operated DRB from November 3, 2014, through December 12, 2014, the date of the Court's entry of the Order granting the State of California's motion for a temporary restraining order. | 16. Undisputed. *See* TDSUF 33. |
| 17. Prior to launching DRB, SYI received from Great Luck, LLC, a legal opinion regarding, among other issues, the scope of UIGEA. | 17. Ignored. |

| | |
|---|---|
| 18. A true and correct copy of a spreadsheet identifying the patrons (approximately 74) who registered with DRB between November 3, 2014, and December 12, 2014, is attached as Exhibit "21" to the Declaration of Glen F. Dorgan (and redacted to protect personal identifying information). | 18. Undisputed. *See* TDSUF 83. |
| 19. A true and correct copy of a spreadsheet identifying all DRB patron transactions between November 3, 2014, and December 12, 2014, is attached as Exhibit "22" to the Declaration of Glen F. Dorgan (and redacted to protect personal identifying information). | 19. Undisputed. *See* TDSUF 117. |
| 20. During the period of November 3, 2014, through December 12, 2014, one or more patrons funded their DRB accounts with either (1) credit or the proceeds of credit (including credit extended through the use of a credit card); (2) electronic fund transfers, funds transmitted by or through a money transmitting business, or the proceeds of an electronic fund transfer or money transmitting business; or (3) a check, draft or similar instrument which was drawn by or on behalf of such patron(s) and drawn on or payable at or through any financial institution. | 20. Undisputed. *See* TD 118. |
| 21. With only one exception, all DRB patrons identified in the spreadsheets attached as Exhibits "21" and "22," completed their transactions from locations off Iipay's Indian lands. | 21. Ignored. |

| | |
|---|---|
| 22. Through DRB, SYI distributed money among persons who paid valuable consideration for the chance of obtaining such money, or a portion of it, upon an agreement that the money, or a portion of it, was to be distributed or disposed of by lot or chance. | 22. Undisputed. *See* TDSUF 119. |
| 23. The operation of DRB requires that several hardware components work together, and those hardware components include, but are not limited to, the following: (i) the "Client," (ii) the "Web Server," (iii) the "Math Server," (iv) the "Game Server," (v) the "Data Base Cluster," (vi) the "Payment Server," (vii) the "KYC Server," (viii) the "Geolocation Server," and (ix) the Internet. | 23. Undisputed. *See* TDSUF 47. |
| 24. The "Client" is the patron's web-browser-enabled device (whether a cell phone, a tablet or iPad, or a laptop or desk computer) that is used by the patron to access the Internet and interface with the "Web Server." | 24. Undisputed. *See* TDSUF 48. |
| 25. The "Web Server" is a computer server that is used by SYI to access the Internet and interface with the Clients. | 25. Undisputed. *See* TDSUF 49. |
| 26. The "Math Server" is a computer server that, among other functions, generates bingo cards and the bingo ball draw using a random number generator. | 26. Undisputed. *See* TDSUF 50. |

| | |
|---|---|
| 27. The "Game Server" is a computer server that, among other functions, processes the games and performs the functions of the "Proxy Player Aids of DRB Gaming System." | 27. Undisputed. *See* TDSUF 51. |
| 28. The "Database Cluster" is a computer server that, among other functions, stores game results and accounting information and generates transaction reports. | 28. Undisputed. *See* TDSUF 52. |
| 29. The "Payment Server" is a computer server that, among other functions, processes patron requests to fund DRB accounts. | 29. Undisputed. *See* TDSUF 53. |
| 30. The "KYC Server" is a computer server that, among other functions, verifies that patrons have supplied accurate personal identification information when registering to participate in DRB (commonly referred to as a "KYC" or "know your customer" service). | 30. Modified without material change. *See* TDSUF 54. |
| 31. The "Geolocation Server" is a computer server that, among other functions, verifies the physical location of each patron who logs in to the DRB website based on the Internet Protocol ("IP") address of the patron's Client device. | 31. Modified without material change. *See* TDSUF 54. |

| | |
|---|---|
| 32. The Internet is the international computer network of interoperable packet switched data networks and is comprised of, among other components, routers and wires that facilitate physical connectivity for transmissions to and from the Clients, the Web Server, the Payment Server, the KYC Server and the Geolocation Server. | 32. Undisputed. *See* TDSUF 55. |
| 33. When DRB is operational, the Web Server, the Math Server, the Game Server, and the Data Base Cluster are housed within the brick and mortar casino building on Iipay's Indian lands. | 33. Undisputed. *See* TDSUF 58. |
| 34. When DRB is operational, the Payment Server, the KYC Server and the Geolocation Server are housed in locations off Iipay's Indian lands. | 34. Modified without material change. *See* TDSUF 59-60. |
| 35. SYI engaged vPayment as its third-party vendor to provide payment services. | 35. Undisputed. *See* TDSUF 35. |
| 36. SYI engaged iDology as its third-party vendor to provide KYC services. | 36. Undisputed. *See* TDSUF 37. |
| 37. SYI engaged Loc-Aid as its third-party vendor to provide geolocation services. | 37. Undisputed. *See* TDSUF 39. |

| | |
|---|---|
| 38.  SYI engaged Great Luck, LLC, as its third-party vendor to, among other tasks, supply some of the hardware and software necessary to operate DRB, including Great Luck's proprietary technology called "Virtual Private Network Assisted Play System" ("VPNAPS"). | 38.  Ignored.  *But see* TDSUF 27. |
| 39.  A true and correct copy of SYI's Job Descriptions for DRB personnel is attached as Exhibit 16 to the Declaration of Glen F. Dorgan. | 39.  Undisputed.  *See* TDSUF 61. |
| 40.  The operation of DRB requires, among other personnel, a "Patron's Legally Designated Agent" and one or more "Proxy Monitors." | 40.  Undisputed.  *See* TDSUF 62. |
| 41.  When David Chelette is present in the SYI office on Iipay Indian lands during the operation of DRB, he holds the title of "Patron's Legally Designated Agent," as that term is used in the DRB Job Descriptions, and it is his job to "conduct proxy play for the Patron by ensuring" the proper functioning of the "Proxy Player Aids of DRB Gaming System." | 41.  Undisputed.  *See* TDSUF 70. |
| 42.  When David Chelette is not present in the SYI office on Iipay Indian lands during the operation of DRB, he designates a proxy monitor to "assume that role" of the "Patron's Legally Designated Agent," as that term is used in the DRB Job Descriptions. | 42.  Undisputed.  *See* TDSUF 71. |

| | |
|---|---|
| 43. When DRB is operational, SYI employs approximately "[a] half a dozen" proxy monitors, and at least one proxy monitor is present at SYI's office on Iipay Indian lands "24/7." | 43. Undisputed. *See* TDSUF 72. |
| 44. The computer components of DRB, not the "Patron's Legally Designated Agent" or the proxy monitors, process requests submitted by patrons to purchase bingo cards, commence game play, conduct the ball draw, daub the cards, declare a winner and account for wins and losses. | 44. Undisputed. *See* TDSUF 67. |
| 45. Fulfilling the responsibility of the "Patron's Legally Designated Agent" requires only that David Chelette or his designee be present within the SYI offices on Iipay Indian Lands, monitor the operation of the DRB hardware and software components, and take remedial action in the event of a system failure. | 45. Undisputed. *See* TDSUF 68. |
| 46. When DRB is operational, a patron using a web-enabled device to navigate to www.desertrosebingo.com will see a pop-up window entitled "Important Information," which states, among other information, that registration is open to residents of California. | 46. Undisputed. *See* TDSUF 73-74. |

| | |
|---|---|
| 47. A patron may then proceed to the registration form to input personal information (including name, date of birth, residence address, and an email address), select a username and password, and follow the instructions in a corresponding email in response to a registration submission. | 47. Undisputed. *See* TDSUF 80. |
| 48. Only those individuals whose personal information is first verified by iDology and who are at least eighteen (18) years of age are permitted to register. | 48. Undisputed. *See* TDSUF 81. |
| 49. Once registered, a patron may log in to DRB by navigating to www.desertrosebingo.com on a web-enabled device and inputting the username and password in the corresponding fields located in the upper right-hand corner of the "Home" tab of the DRB website. | 49. Undisputed. *See* TDSUF 84. |
| 50. Only those registered patrons whose physical location is confirmed by Loc-Aid to be within the State of California at the time of login are permitted to login to DRB. | 50. Undisputed. *See* TDSUF 85. |
| 51. Once a registered patron logs in to DRB, a pop-up window entitled "Important Information" is displayed on the screen, which provides access to additional information, including the House Rules, a true and correct copy of which is attached as Exhibit "19" to the Declaration of Glen F. Dorgan. | 51. Undisputed. *See* TDSUF 86-88. |

| | |
|---|---|
| 52. By clicking "OK" on the pop-up window entitled "Important Information," patrons are directed to the "Bingo" tab of the DRB website. | 52. Undisputed. *See* TDSUF 89. |
| 53. From the "Bingo" tab, a registered patron may navigate to the "Add Funds" tab on the DRB webpage, click on the link to vPayment, input credit card information, and authorize a credit transaction to fund an account (not to exceed $9,000.00). | 53. Undisputed. *See* TDSUF 91. |
| 54. From the "Bingo" tab, a patron with a funded account may select a denomination (or price of the card, ranging from $.01 to $1.00) from "Games" subpage. | 54. Undisputed. *See* TDSUF 93. |
| 55. Once a denomination is selected and clicked, a pop-up window entitled "Request Form" is displayed on the screen. | 55. Undisputed. *See* TDSUF 95. |
| 56. From the "Request Form" pop-up window, the patron may select the number of games (ranging from 1 to 5), select the number of cards to be played per game (ranging from 1 to 500), and click "Submit Request!" | 56. Undisputed. *See* TDSUF 98. |
| 57. Once "Submit Request!" has been clicked, a pop-up window entitled "System Message" is displayed on the screen (stating, "Your Request Form has been submitted successfully and has been accepted by Desert Rose Bingo") and the patron's account is debited. | 57. Undisputed. *See* TDSUF 99. |

| | |
|---|---|
| 58. The means by which patrons complete the steps identified above in Fact Nos. 54 through 57 involve the use, at least in part, of the Internet. | 58. Ignored. |
| 59. From the "System Message" pop-up window, an Account Holder may click "OK" to view the status of the requested game(s) in the "Requested" subpage of the "Bingo" tab of the DRB webpage. | 59. Undisputed. *See* TDSUF 101. |
| 60. At the "Requested" subpage of the "Bingo" tab of the DRB webpage, the status of a requested game is identified by "Request ID," card denomination, game pattern, number of "Proxies," number of cards, number of games, a timer, and the graphics theme for the results playback mode. | 60. Undisputed. *See* TDSUF 103. |
| 61. The number depicted under the heading "Proxies" on the "Requested" subpage of the "Bingo" tab of the DRB webpage corresponds with the number of patrons who have completed the steps identified above for that common game. | 61. Undisputed. *See* TDSUF 104. |
| 62. During the period that the number depicted under the heading "Proxies" on the "Requested" subpage of the "Bingo" tab of the DRB webpage is below the minimum number established in advance by SYI (ranging from 2 to 5), a message will appear under the "Timer" heading that states, "waiting for more proxies." | 62. Undisputed. *See* TDSUF 105. |

| | |
|---|---|
| 63. Once the number depicted under the heading "Proxies" on the "Requested" subpage of the "Bingo" tab of the DRB webpage reaches the minimum number established in advance by SYI, a timer will appear under the "Timer" heading and will commence a 60-second countdown. | 63. Undisputed. *See* TDSUF 106. |
| 64. Once the timer under the "Timer" heading counts down to "0:00," the word "closed" will appear under the "Timer" heading. | 64. Undisputed. *See* TDSUF 107. |
| 65. At the "Completed Requests" subpage of the "Bingo" tab of the DRB webpage, the status of a completed game is identified by, among other information, the "Request ID," the "Game ID," and the date and time of completion of the game. | 65. Undisputed. *See* TDSUF 113. |
| 66. By clicking the icon under the heading "Watch Results" on the "Completed Requests" subpage of the "Bingo" tab of the DRB webpage, a patron can activate a video displaying (i) the patron's card, with twenty-four numbers arranged within a 5-by-5 box grid and a "free space" occupying the middle box; (ii) the ball draw board, with a 15-by-5 box grid containing numbers 1 through 75; (iii) the ball draw, with graphics highlighting the numbers on the ball draw board; (iv) the card daubing, with graphics highlighting the numbers on the patron's card that correspond to the ball draw; (v) the username of the winning patron; and (vi) a graphics display that corresponds with the game theme. | 66. Undisputed. *See* TDSUF 114. |

| | |
|---|---|
| 67.  The value of any prize to be awarded to a patron is based on a certain percentage of the pay-in amount of the game cards purchased for that common game, with a certain percentage retained by SYI. | 67.  Undisputed.  *See* TDSUF 111. |
| 68.  On November 14, 2014, Micah Scott, a Special Agent with the California Department of Justice, Bureau of Gambling Control, logged on to DRB, participated in a $.5 game, and saved a video file of the progress of the game, a true and correct copy of which is attached as Exhibit "12" to the Declaration of Glen F. Dorgan. | 68.  Modified without material change.  *See* TDSUF 116. |
| 69.  A true and correct copy of the article authored by David Vialpando and titled "Iipay Nation's Battle for Tribal Sovereignty Continues" is attached as Exhibit "23" to the Declaration of Glen F. Dorgan. | 69.  Undisputed.  *See* TDSUF 147. |
| 70.  A true and correct copy of the article authored by David Vialpando and titled "The Fight for Desert Rose Bingo Underway: Implications Felt Across Indian Country" is attached as Exhibit "24" to the Declaration of Glen F. Dorgan. | 70.  Undisputed.  *See* TDSUF 148. |

| | |
|---|---|
| 71.  A true and correct copy of a screenshot of the message displayed on www.desertrosebingo.com after the gaming operations were suspended (stating, "We look forward to resuming the operation of DesertRoseBingo.com in the near future") is attached as Exhibit "25" to the Declaration of Srinivasan Jagannathan. | 71.  Undisputed. *See* TDSUF 149. |